Haggerty, S. Jane, J.

BACKGROUND

Pursuant to Mass.R.Civ.P. 56, the defendants, Gregory F. Whitten and Ruth Ann Whitten (“the Whit-tens”), DKSW, LLC, David Seuss, and Dean Dussias[1] (collectively, “the Defendants”) move for summary judgment in favor of the defendants and against plaintiff TLP Leasing Programs, Inc. (“TLP”), Wellesley Leasing, Inc. (“Wellesley”), Cobblestone Corporation of Northern New England, Inc. (“Cobblestone"), and Heller Financial, Inc. (“Heller”) (collectively the “plaintiffs”), on all claims against them in the First Amended Complaint. Specifically, the counts the plaintiffs have asserted against the defendants are: Counts XIII-XIV (fraudulent transfer, G.L.c. 109A); Counts XV-XVI (civil conspiracy): and Counts XXV-XXVI (G.L.c. 93A, §11).
For the reasons which follow, the defendants’ motion for summary judgment is DENIED.

DISCUSSION

The issue for summary judgment purposes is whether a bridge “loan” from an investor of Northern Light to the company is a capital contribution or a loan. “Whether an advance should be treated as a capital contribution to, rather than creating a debt of, the [company] depends to some extent on the objective intention of the contributor, and in part on whether in particular circumstances, equitable considerations *229 require treatment of the advance as a capital contribution.” Yankee Microwave, Inc. v. Petricca Communications Systems, Inc., 53 Mass.App.Ct. 497, 522 (2002), quoting Friedman v. Kurker, 14 Mass.App.Ct. 152, 159-60 (1982).
The circumstances of the bridge “loan” from Northern Light’s shareholder, Gregory and Ruth Whitten raise questions as to their intent at the time the loan was made. When the Whittens made the ten million dollar loan in May of2001, Northern Lights was losing approximately three to four million dollars on a monthly basis. At that time, company officials and shareholders expected to consummate a deal with Lexis-Nexis which would relieve the cash flow problems.
Due to this financial weakness, however, the company could not secure a loan from an outside source. The Whittens offered cash to the financially strapped company in the form of a “loan." In return, the company granted the Whittens a securiiy interest in all its assets. The interest rate on the Whitten financing[2] was thirty-five percent, and the full $3.5 million in interest would accrue and be due regardless whether the bridge “loan” was paid in a day or in a year. E-mails written by CEO of Northern Lights, C. David Seuss suggest that the interest rate was not based upon risk, but rather it was designed to provide the Whittens and the other investors in the Whitten financing with the customary discount for entering a round of financing early when the financing would be converted to equity. In addition, Northern Light’s balance sheet did not reflect the Whitten financing as a loan but it was placed under a heading of “Accrued Expenses and Compensated Absences.”
In cases where the defendants’ states of mind or motives are at issue, summary judgment is rarely appropriate. Mulford v. Mangano, 35 Mass.App.Ct. 800, 804 (1994). Given the exceptionally high interest rate of the “loan,” the e-mails from the CEO suggesting that the pricing of the loan was based on establishing a discount for the next round of equity financing, and Northern Light’s failure to treat the bridge “loan” as a loan on the balance sheet, the issue of intent is one for the jury.

ORDER

For the foregoing reasons, the defendants’ motion for summary judgment is DENIED.

 Defendants Northern Light Technology, (“NLT I”) and Northern Light Technology, LLC. (“NLT II”) (collectively, the “Northern Light entities”) are out of business and have never filed an appearance in this case and the defendants divine, inc. and Divine Ireland, Inc. (collectively; “divine”) have since filed for bankruptcy protection. Accordingly, neither the Northern Light entities nor divine are active participants in this law suit in any capacity. All the remaining defendants are jointly represented, and are moving jointly for summary judgment.

 The Whitten financing included investors in addition to the Whittens.